UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| TBD BREWING LLC (D/B/A AERONAUT BREWING CO.),<br><br>    Plaintiff,<br><br>v.<br><br>BENJAMIN HOLMES and FERMENTATION ARTS BRASSERIE, LLC<br><br>    Defendants. | Case No. |

## **COMPLAINT**

Introduction

In 2013 Ronn Friedlander, Daniel Rassi, and Benjamin Holmes, three friends living in Somerville, founded TBD Brewing LLC, d/b/a Aeronaut Brewing Co. ("Aeronaut"), a brewery that combined the founders' love of beer and their scientific expertise as computer scientists and graduate students at MIT. Aeronaut was a success, and grew into a popular and well-regarded brewery.

Over the past two years, due to concerns about Mr. Holmes's management style, Aeronaut has worked with Mr. Holmes to reduce his role at the company, although he remained on the Board of Managers and an officer collecting a salary through the end of 2019. In December 2019, Aeronaut discovered that Mr. Holmes had, without its knowledge, founded a competing brewery and was actively taking Aeronaut property, resources, trade secrets, and proprietary information to use in his new venture. These activities are a violation of Mr. Holmes's ongoing fiduciary duties and duties of loyalty to Aeronaut, where he remains a

shareholder.  If Mr. Holmes is allowed to continue to use these resources, Aeronaut will be harmed permanently.

## PARTIES

1.       Plaintiff Aeronaut is a Massachusetts corporation with a principal place of business at 14 Tyler Street, Somerville, Massachusetts.

2.       Defendant Benjamin Holmes is a Massachusetts resident and a shareholder in Aeronaut.

3.       Defendant Fermentation Arts Brasserie, LLC, is a Massachusetts corporation with an address of 25 Spencer Ave., Somerville, Massachusetts.

## JURISDICTION

4.       The Jurisdiction of this court is invoked under 28 U.S.C. § 1331.

5.       This Court has personal jurisdiction over the parties and venue is proper because Plaintiff and Defendants are located and do business in Massachusetts.

## FACTS

6.       Mr. Friedlander, Mr. Rassi, and Mr. Holmes are all Members of Aeronaut.  Mr. Friedlander and Mr. Rassi continue to serve on the Board of Managers of Aeronaut.  Mr. Holmes is no longer on the Board of Managers as of January 1, 2020, as a result of a Board election held between the dates of December 2 through 13, 2019.

7.       On or about December 19, 2019, Aeronaut became aware that Mr. Holmes had changed the social media handle for one of its Instagram accounts from "aeronautcans" to "fab_cans."  Mr. Holmes also attempted to change the contact information and password for that account but Aeronaut was notified by Instagram's fraud detection program and cancelled the changes before they took effect.  Aeronaut uses "aeronautcans," among other social media

accounts, to connect with and market to its most engaged customers and business partners. The account is listed on a company registry of communication channels and is a valuable piece of Aeronaut property.

8. Aeronaut was concerned with Mr. Holmes's meddling with its Instagram handle and looked into what "FAB Cans" meant. They quickly discovered that Mr. Holmes, while still serving as a Manager and Member of Aeronaut, and while he was being compensated by Aeronaut, had created a new, directly competing company called "FAB Beer" ("FAB").

9. In fact, Mr. Holmes founded FAB on May 28, 2018, as "Flight LLC." He changed its name to "Future Arts Brasserie LLC" on June 22, 2018, and then again to "Fermentation Arts Brasserie LLC" on July 9, 2018. Mr. Friedlander and Mr. Rassi had no knowledge of, and never would have consented to, him founding a competing brewery while still a Manager at Aeronaut.

10. In an interview with Boston Magazine, which was published on December 30, 2019, Mr. Holmes said that he came up with the idea for FAB as follows:

> One day, Holmes was in a Cape Cod studio with Massachusetts artists Adam O'Day and Andy Jacob, working on labels for some new *brews for Aeronaut*. Then he heard the news that a pro-Trump supporter popped a "baby Trump" balloon that was set up to protest the president's visit to Alabama. The creative collaborators *decided then and there* to "make a statement about hate and destruction not being an effective way to send a political message," Holmes says, using their preferred communication tools: Beer, and art. And so, *FAB Beer was born.*

Jacqueline Cain, *Aeronaut Brewing Founder's New FAB Beer Project Is Making "Beer for the Sake of Art and Activism"*, Boston Magazine, Dec. 30 2019, https://www.bostonmagazine.com/restaurants/2019/12/30/fab-beer-project-baby-dictators/ (emphasis added). Instead of offering this opportunity, which came up *during an Aeronaut business*

*meeting*, to Aeronaut, as he was required to do as a shareholder, Mr. Holmes founded a competing company instead.

11. By at least December 2019, Mr. Holmes had already created a website "fab.beer," which was first registered on or about May 27, 2018, to promote his new venture. The website noted that FAB had started making beer on December 3, 2019 and December 4, 2019, and that a new batch was tasted on December 6, 2019, and was set to be released on December 15, 2019.

12. Mr. Holmes accessed and viewed Aeronaut beer recipes around the time he likely needed recipes for his new company. On November 21, 2019, Mr. Holmes searched the web for "ekos brewmaster print recipe," while logged into his Aeronaut Google account. Ekos Brewmaster is a password protected software program on which Aeronaut stores its recipe information. Aeronaut's recipes are proprietary and kept confidential on a need to know basis even within the company. Mr. Holmes accessed Aeronaut recipes for four specific, highly acclaimed Aeronaut beers on November 21, 2019 and November 25, 2019, and viewed a report listing all of Aeronaut's ingredients for all its beers. Mr. Holmes had no legitimate Aeronaut business purpose for accessing these documents.

13. Mr. Holmes also took Aeronaut's label design and is using it at FAB. For example, Aeronaut uses an unusual font for its labels called "DIN," which is not widely available and which Aeronaut had to purchase from a third-party vendor. This font is specifically mentioned in Aeronaut's brand guide. Some recent Aeronaut labels include a distinctive design element encouraging customers to peel off the labels and use them as stickers: "I am art…[place] me somewhere special." Aeronaut's label orientation on its cans is also unique, with a mix of landscape-oriented and portrait-oriented cans in each four-pack. FAB's cans also featured this design element. Upon information and belief, no other beer company uses a similar combination of design elements.

14. The FAB labels are clear copies of Aeronaut's design. They were designed by the same artists currently featured on Aeronaut cans, and utilize the same artistic features, font, and template. The placement of the title, artwork, Universal Product Code ("UPC"), descriptive statements, informational statements and Surgeon General's warning are all in the same locations on the FAB labels as on Aeronaut's labels.

15. On or about December 19, 2019, Aeronaut also discovered that FAB was using an Aeronaut UPC, the bar code and twelve-digit number that allows products to be scanned at a point of sale, on its labels. Aeronaut purchased that UPC and already used it on its "Cocoa Sutra," stout beer, which was released before FAB's first beer and remains on merchant shelves. The purpose of UPCs is to make it easy to identify a product when an item is scanned at checkout. Having the same UPC code on both Aeronaut and FAB products risks customer, brand and pricing confusion and confirms that Mr. Holmes copied an Aeronaut label template to use at FAB.

16. After Aeronaut notified Mr. Holmes on December 19, 2019 about this misuse of the UPC Aeronaut had purchased, Mr. Holmes, through his attorney, claimed that he was relabeling all products on the market and in distribution channels bearing that code. However, as of at least January 12, 2020, the offending cans were still readily available with at least one retailer and had not been removed, causing ongoing damage to Aeronaut. Moreover, consumers have posted photos of the FAB cans with Aeronaut's design and UPC on social media as late as January 1, 2020.

17. Aeronaut has also discovered that, between November 26 and 27, 2019, Mr. Holmes exported over 20,000 of Aeronaut's contacts from MailChimp, which is a password protected email marketing service Aeronaut uses to connect with customers, visitors, vendors, and distributors regarding company news, events and products. No one else from Aeronaut has exported anything

from MailChimp within the last year and Mr. Holmes had no legitimate Aeronaut business purpose for doing so here.

18.     Aeronaut later learned that Mr. Holmes had exported and retrieved customer lists from Eventbrite, which is a password protected event management and ticketing service Aeronaut utilizes. These lists included customer names and email addresses as well as valuable information regarding the preferences and purchase history for over 14,000 ticketed guests to the Aeronaut brewery and taproom for 171 ticketed events between June 6, 2014 and November 26, 2019. In addition, this list included approximately 2,500 customer billing addresses, and associated significant sales transaction amounts in ticket sales. This information is not ascertainable from other sources.  No one else from Aeronaut has ever performed a multi-event export from Eventbrite and Mr. Holmes had no legitimate Aeronaut business purpose for doing so here.

19.     The MailChimp and Eventbrite lists were the result of years of proprietary Aeronaut efforts.  Mr. Holmes's unauthorized possession of these lists is a serious threat to Aeronaut's business, both because of its commitment to protect the personal information of its customers, and because it risks impermissible competition and usurpation of corporate opportunities by Mr. Holmes.  It is valuable, proprietary company property, to which Mr. Holmes has no entitlement.

20.     Mr. Holmes also accessed, downloaded or improperly granted permission to Aeronaut's proprietary customer lists, financial reports, and detailed quantitative modelling for possible Aeronaut expansion stored on Aeronaut's Google Drive without any legitimate Aeronaut business purpose for doing so.

21.     In an effort to protect its confidential information, Aeronaut's employee handbook prohibits all Aeronaut employees from copying, removing, using or disclosing Aeronaut's confidential information including finances, pricing, products and new product development, software and

computer programs, marketing strategies, suppliers and customers and potential customers, to anyone outside the company.

22. Mr. Holmes also has not returned, or repaid Aeronaut for, his keys, his cellular phone, a personal income tax levy, poster prints, and framed artist rendition prints, despite Aeronaut's request that he do so immediately no later than January 1, 2020, and despite written promises to return some of these items.

23. While Mr. Holmes, through his counsel, has represented that he will address some of these issues, based on the degree of wrongdoing that already has occurred, Plaintiffs cannot accept his word on this account. Further, Aeronaut's investigation into his conduct is ongoing, and there may be additional instances of wrongdoing which Mr. Holmes has not yet acknowledged. Plaintiffs have already been harmed by his conduct and stand to continue to be harmed if he is not ordered to immediately stop these impermissible activities.

## COUNT I
## BREACH OF FIDUCIARY DUTY
### (Aeronaut v. Mr. Holmes)

24. Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth herein.

25. As an Aeronaut Member, Mr. Holmes owes a continuing duty of the utmost good faith, fair dealing and loyalty to Aeronaut and to the other Members.

26. By founding a competing company, attempting to interfere with Aeronaut social media accounts, misappropriating proprietary and trade secret Aeronaut information, usurping Aeronaut corporate opportunities, and interfering with Aeronaut's advantageous business relations, among other activities, he has breached those fiduciary duties.

27. Plaintiff has been damaged by Mr. Holmes's breach of his fiduciary duties.

## COUNT II
## BREACH OF DUTY OF LOYALTY
### (Aeronaut v. Mr. Holmes)

28. Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth herein.

29. Mr. Holmes owed a common law duty of loyalty to Plaintiff as a board member, corporate officer and high-level employee of Aeronaut.

30. Mr. Holmes's conduct described above violated his common law duty of loyalty.

31. Plaintiff has been damaged by Mr. Holmes's breach of his common law duty of loyalty.

## COUNT III
## UNJUST ENRICHMENT
### (Aeronaut v. Defendants)

32. Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth herein.

33. FAB and Mr. Holmes have received valuable property and information from the Plaintiff, including but not limited to at least a UPC, label templates, recipes, works of art, financial models and contact lists.

34. By so doing, Mr. Holmes and FAB have unjustly enriched themselves, to the detriment of Plaintiff.

35. Plaintiff has been damaged by Defendants' unjust enrichment.

## COUNT IV
## CONVERSION
### (Aeronaut v. Mr. Holmes)

36. Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth herein.

37. Mr. Holmes diverted contact lists and proprietary information and property from Aeronaut, as set out above.

38. Aeronaut has a right to immediate possession of these materials and information.

39. Mr. Holmes converted these materials and information to his own use by exercising dominion which was inconsistent with Aeronaut's rights.

40. As a result, Plaintiff was damaged.

### COUNT V
### MISAPPROPRIATION OF TRADE SECRETS AND CONFIDENTIAL INFORMATION
### (Aeronaut v. Defendants)

41. Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth herein.

42. While employed by Aeronaut, Mr. Holmes was a high-level employee privy to strategic plans, and confidential and proprietary information critical to Aeronaut's successful business model.

43. This information included specific information including recipes, patterns, methods, techniques, processes, business strategies, customer lists, and customer data that provided Aeronaut with economic advantage, and for which Aeronaut provided reasonably efforts to maintain its confidentiality.

44. As described above, in the course of Mr. Holmes's departure from Aeronaut, he misappropriated, used, and disclosed Aeronaut's trade secrets, in violation of M.G.L. ch. 93, section 42, et seq.

45. Mr. Holmes continues to intend to misappropriate, use, and disclose Aeronaut's trade secrets in his operation of FAB.

46. FAB, in the operation of its business, continues to misappropriate Aeronaut's trade secrets.

47. Mr. Holmes's and FAB's misappropriations caused Aeronaut to suffer damages.

## COUNT VI
## M.G.L. Ch. 93A, § 11
### (Aeronaut v. FAB)

48. Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth herein.

49. Aeronaut and FAB are both businesses within the meaning of M.G.L. c. 93A.

50. FAB's unfair, deceptive, knowing, and material practices, in violation of M.G.L. c. 93A include, without limitation, misappropriation of trade secrets, unjust enrichment, and tortious interference with actual and prospective business relations, as set forth in this Complaint.

51. FAB's violation of M.G.L. c. 93A has damaged Aeronaut.

## COUNT VII
## TRADE DRESS INFRINGEMENT
### (Aeronaut v. Defendants)

52. Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth herein.

53. The design and appearance of FAB's beer cans, together with the elements making up the overall image that serves to identify this product to the consumer, intentionally are so similar to Aeronaut's beer cans as to cause customer confusion with regards to its source.

54. This purposeful similarity amounts to trade dress infringement against Aeronaut.

55. Aeronaut has been harmed by this infringement.

## COUNT VIII
## TORTIOUS INTERFERENCE WITH CONTRACTUAL AND ADVANTAGEOUS BUSINESS RELATIONS
### (Aeronaut v. Defendants)

56. Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth herein.

57. Defendants knew of Aeronaut's contractual and advantageous business relationships with its customers, suppliers, distributors, and artists.

58. Notwithstanding this knowledge, Defendants willfully and intentionally attempted to interfere with, and have interfered with, Aeronaut's ongoing contractual and advantageous business relationships with its customers, suppliers, distributors, and artists.

59. Such actions were, without right, calculated to cause damage, and have caused damage, to Aeronaut and its business affairs.

60. Such actions were intentional, willful, wanton, and/or reckless, and were calculated to harm Aeronaut and its business affairs.

61. As a direct and proximate result of Defendants' actions, Aeronaut has suffered damages in an amount that cannot reasonably be ascertained at present.

62. Unless restrained by this Court, Defendants will continue their unlawful acts, and Aeronaut will continue to be irreparably harmed.

### COUNT IX
### TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL AND ADVANTAGEOUS BUSINESS RELATIONS
### (Aeronaut v. Defendants)

63. Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth herein.

64. Defendants know of Aeronaut's prospective contractual and advantageous business relationships with its customers, suppliers, distributors, and artists.

65. Notwithstanding this knowledge, Defendants willfully and intentionally attempted to interfere with, and have interfered with, Aeronaut's prospective contractual and advantageous business relationships with its customers, suppliers, distributors, and artists.

66. Such actions were, without right, calculated to cause damage, and have caused damage, to Aeronaut and its business affairs.

67. Such actions were intentional, willful, wanton, and/or reckless, and were calculated to harm Aeronaut and its business affairs.

68. As a direct and proximate result of Defendants' actions, Aeronaut has suffered damages in an amount that cannot reasonably be ascertained at present.

69. Unless restrained by this Court, Defendants will continue their unlawful acts, and Aeronaut will continue to be irreparably harmed.

**COUNT X**
**INJUNCTIVE RELIEF**
**(Aeronaut v. Defendants)**

70. Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth herein.

71. As set out above and in their Motion for Temporary Restraining Order and Preliminary Injunction, filed herewith, Plaintiff seeks a preliminary and permanent injunction:

   a) enjoining Defendants from using, distributing, marketing, disclosing, benefiting from, promoting, selling, or offering for sale any products using, incorporating or deriving from Aeronaut's property, resources, trade secrets and confidential information including Aeronaut's recipes, label designs, UPCs, customer lists and proprietary business information;

   b) requiring Defendants recall and destroy all FAB products using, distributing, marketing, disclosing, benefiting from, promoting, selling, or offering for sale any products using, incorporating or deriving from Aeronaut's property, resources, trade secrets and confidential information including Aeronaut's recipes, label designs, UPCs, customer lists and proprietary business information;

   c) directing Defendants within 30 days of the court's Order to return or destroy all copies and versions of all property, resources, trade secrets and confidential information including Aeronaut's recipes, label designs, UPCs, customer lists and proprietary business information and to provide verifiable proof from an objective third party that they have taken the necessary steps to comply with this order, and to immediately stop and refrain from brewing beer until it has provided such verification.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff request that the Court award them injunctive relief, as well as their damages, including multiple damages, plus interest, costs, and attorneys' fees, and any other relief that is equitable and just.

## JURY DEMAND

Plaintiff demand a trial by jury on all counts so triable.

                                                  TBD BREWING LLC (D/B/A AERONAUT BREWING CO.),

By its attorneys,

/s/ Lindsay M. Burke
Michael P. Sams, Esq., BBO# 567812
mpsams@kslegal.com
Lindsay M. Burke, Esq., BBO# 674808
lmburke@kslegal.com
Alexander R. Zwillinger, Esq. BBO# 687078
KENNEY & SAMS, P.C.
Reservoir Corporate Center
144 Turnpike Road, Suite 350
Southborough, Massachusetts 01772
  Tel.  508-490-8500

Dated:  January 15, 2020